# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MOLTON, ALLEN & WILLIAMS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 09-cv-6924 |
| v. | ) |
| | ) Honorable Amy J. St. Eve |
| CONTINENTAL CASUALTY INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant Continental Casualty Insurance Company ("CNA") moves to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(3), and to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* For the reasons set forth below, the Court grants CNA's motion to compel arbitration, and denies CNA's motion to dismiss.

## BACKGROUND

Plaintiff Molton, Allen and Williams, LLC ("MAW") filed its complaint for injunction and declaratory relief against CNA on November 3, 2009. (R. 1-1, Complaint.) An October 15, 2003 Agency Agreement (the "Agreement") governs the relationship between CNA and MAW. Pursuant to the Agreement, CNA granted MAW, *inter alia*, the authority to issue insurance contracts to third parties in exchange for commissions from CNA. (R. 13-1, CNA's Mot. Dismiss or Compel Arb., Ex. 1.) CNA contends that MAW exceeded its authority under the Agreement by binding CNA to a policy issued to Sabel Industries. This case arises from CNA's demand on MAW for reimbursement of $2,605,968.61 in defense and settlement costs that CNA made to Sabel Industries and William Lancaster as a result of a December 15, 2003 car accident.

> The Agreement contains a mandatory arbitration clause which states:
>
> In the event of any dispute arising out of or relating to this agreement which cannot be resolved by negotiation, the parties shall endeavor to settle the dispute by non-binding mediation. Such mediation shall take place in Chicago, Illinois and the parties shall select a mediator from the JAMS Chicago Panel of Neutrals, unless otherwise agreed upon.
>
> Any dispute which has not been resolved by mediation within 60 days of the demand for such procedure shall be resolved by final and binding arbitration under the Commercial Arbitration Rules of the American Arbitration Association. The arbitration shall take place before a panel of three arbitrators which shall be selected in accordance with American Arbitration Association Rule R-13. The arbitrators shall have no power or authority to award consequential, punitive or exemplary damages. Any award made may be confirmed in a court having jurisdiction. All arbitration shall take place in Chicago, Illinois unless otherwise agreed upon.
>
> Notwithstanding the above, [CNA] may, in [its] sole discretion, pursue judicial relief in any case involving allegations of fraud, misconduct or where [CNA] believe[s] [MAW] ha[s] acted outside the scope of [its] authority, as set forth in the agreement.
>
> The laws of the State of Illinois shall apply, without regard its conflict of law rules, to this agreement.

(R. 13-1, Ex. 1, p. 5, § VII.O.)

Pursuant to these provisions of the Agreement, CNA submitted the dispute underlying this lawsuit to non-binding mediation, and the parties mediated the dispute unsuccessfully on January 14, 2009 and August 4, 2009. Accordingly, on September 4, 2009, CNA filed its demand for arbitration with the American Arbitration Association ("AAA"). On September 28, 2009, MAW filed its answer with the AAA, without challenging the enforceability of the arbitration provision contained in the Agreement. Thereafter, on November 3, 2009, MAW filed its complaint with this Court seeking a judgment declaring that it is not responsible for indemnifying CNA in the underlying dispute.

2

## LEGAL STANDARD

I.      Rule 12(b) Motions to Dismiss

In assessing a defendant's motions to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(3) for improper venue, the Court must view the allegations in the complaint in the light most favorable to plaintiff and accept all well-pleaded facts in the complaint as true. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007); *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987); *Rotec Indus., Inc. V. Aecon Group, Inc.*, 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006.) In considering a Rule 12(b)(3) motion to transfer venue, the Court may also examine facts outside the complaint. *See Rotec Indus., Inc.,* 436 F. Supp. 2d at 933. Similarly, on a Rule 12(b)(1) motion, the Court may look beyond the jurisdictional allegations and consider other evidence submitted by the parties. *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003).

II.     Federal Arbitration Act

The Federal Arbitration Act ("FAA") "'is a congressional declaration of a liberal federal policy favoring arbitration agreements' and 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Continental Cas. Co. v. American Nat'l Ins. Co.,* 417 F.3d 727, 730 (7th Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Any doubts concerning the scope of arbitration issues are resolved in favor of arbitration. *Id.* Further, courts broadly interpret the FAA to govern the interpretation, enforcement, and validity of arbitration agreements in commercial contracts. *See Moses H. Cone Mem'l Hosp.,* 460 U.S at 24.

The FAA provides that binding arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA provides that if an agreement is governed by a valid arbitration provision, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitrations." 9 U.S.C. § 3. "Thus, if one party to a contract containing an arbitration clause attempts to avoid arbitration and files suit in the district court, the other party may move to stay or dismiss the action on the ground that the FAA requires the arbitration clause of the contract to be enforced." *See id.* § 3 (authorizing a motion to stay); *id.* § 4 (authorizing a petition to compel arbitration). *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 970 (7th Cir. 2007).

## ANALYSIS

In its motion, CNA requests the Court to dismiss MAW's complaint and to compel arbitration. While the Agreement and § 3 of the FAA mandate an order compelling arbitration in this case, pursuant to Seventh Circuit precedent and the FAA, the proper course of action in light of the order to compel arbitration is to stay the case, rather than dismiss it pursuant to Rule 12(b)(1) or 12(b)(3).

I.  **Motion to Compel Arbitration Pursuant to the FAA**

"'Whether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court on the basis of the contract entered into by the parties.'" *Zurich Am. Ins. Co. v. Watts Indus.*, 466 F.3d 577, 580-581 (7th Cir. 2006) (quoting *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d

4

648 (1986)); *see, e.g.*, *Continental Cas. Co.*, 417 F.3d at 730 ("Whether the parties have agreed to arbitrate is a question normally answered by the court rather than by an arbitrator. The issue is governed by state law principles governing contract formation.") (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); *Reliance Ins. Co. v. Raybestos Prods. Co.*, 382 F.3d 676, 678-79 (7th Cir. 2004)). "To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co.*, 466 F.3d at 580-581.

MAW does not dispute any of the three requirements set forth in *Zurich Am. Ins. Co.* Instead, MAW argues that (i) CNA's motion to compel arbitration is premature, (ii) the arbitration provision is void and unenforceable, and (iii) MAW's statute of limitations defense to CNA's claim is not subject to arbitration. The Court will address each of these arguments in turn.

### A. Timeliness of CNA's Motion to Compel Arbitration

MAW first argues that CNA's motion to compel arbitration under § 3 of the FAA is premature. In support of this argument, MAW relies on two District of Columbia cases which noted that courts in that district review motions to compel arbitration employing the same standard of review governing Rule 56 motions. MAW, however, has pointed to no controlling case law in the Seventh Circuit to support its timeliness argument. Indeed, the Seventh Circuit has stated that, "[a] motion to stay proceedings and compel arbitration under the terms of the United States Arbitration Act, 9 U.S.C. §§ 1-14, is not the equivalent of [a] motion for summary judgment." *Merit Ins. Co. v. Leatherby Ins. Co.*, 581 F.2d 137, 142 (7th Cir. 1978). The

Seventh Circuit has also held that judicial economy requires "prompt invocation of an arbitration clause." *Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995) (citing *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388 (7th Cir. 1995)). Furthermore, the Seventh Circuit frequently reviews appeals of motions to compel arbitration and resolves those appeals by interpreting arbitration clauses and leaving factual issues to the arbitration. *See, e.g., Boomer v. AT&T Corp.*, 309 F.3d 404; *Zurich American Ins. Co.*, 466 F.3d 577. Tellingly, MAW has not asserted the need for any further discovery or argued that there are issues beyond those presented in the briefing on the motion to dismiss and compel arbitration necessary to the resolution of CNA's motion. Accordingly, MAW has failed to demonstrate that CNA's motion is premature.

### B. Enforceability of Arbitration Provision

MAW next argues that the arbitration provision contained in the Agreement is void and unenforceable. MAW premises its argument on the language of the Agreement following the mandatory arbitration provision applicable to both parties which states, "[n]otwithstanding the above, [CNA] may, in [its] sole discretion, pursue judicial relief in any case involving allegations of fraud, misconduct or where [CNA] believe[s] [MAW] ha[s] acted outside the scope of [its] authority, as set forth in the agreement." (R. 13-1, Ex. 1.)

To support its argument, MAW relies on *Lopez v. Plaza Fin. Co.*, 1996 WL 210073, 1996 U.S. Dist. LEXIS 5566 (N.D. Ill. Apr. 25, 1996), which it contends is directly on point with the facts of this case. *Lopez*, however, involved a buyer that entered into an installment contract with a seller. Pursuant to that agreement, the parties entered into a separate arbitration agreement which provided that claims arising out of the installment contract were subject to

6

arbitration. The arbitration agreement further provided that any dispute arising from the buyer's default under the installment contract was not subject to arbitration. The court held that the arbitration agreement was unenforceable because the agreement lacked mutuality of obligation as it did not require the seller to submit any of its claims to arbitration. *Id.* The court, however, specifically noted that "courts have held that mutuality is not required where other consideration supports a one-sided duty to arbitrate." *Id.* at *16. *See also Gonzalez v. W. Suburban Imps., Inc.*, 411 F. Supp. 2d 970 (N.D. Ill. 2006) (finding that arbitration agreement was a separate contract in its own right that required independent review, and holding that arbitration agreement was unenforceable because there was no mutual obligation to arbitrate claims); *Vassilkovska v. Woodfield Nissan, Inc.*, 358 Ill. App. 3d 20, 830 N.E.2d 619 (Ill. App. Ct. 2005) (citing *Lopez* and holding that "*where the agreement to arbitrate is a separate document*, purporting to bind each party to the arbitration agreement, but subsequently creates a total exclusion of one party's obligation to arbitrate, the obligation to arbitrate is illusory and unenforceable") (emphasis added).

MAW argues that the arbitration provision in the Agreement is similarly void because it permits CNA to seek judicial relief "in basically every sort of conceivable dispute that may arise under the [Agreement]," while MAW must adjudicate all of its disputes arising under the Agreement pursuant to arbitration. (R. 18-1, MAW's Response, p. 9.) In other words, MAW argues that the Agreement is lacking in mutuality. MAW also argues that there is nothing in the Agreement "that could even arguably qualify as consideration, other than the parties' own promises to each other. No money or anything else of value exchanged hands between the parties." *Id.* This argument, however, is contrary to well-established Illinois law governing

7

consideration and mutuality in arbitration agreements, and ignores an important distinction between the arbitration agreement in *Lopez* and the arbitration provision at issue here.

Following the lead of several state and federal decisions regarding this very issue, the Court disagrees with the extension of the district court's holding in *Lopez* to the facts of the present case because the arbitration provision at issue here is contained in a broader contract between the parties. In reaching its decision, the *Lopez* court relied on *Hull v. Norcom, Inc.*, 750 F.2d 1547, 1550 (11th Cir. 1985), in which the Eleventh Circuit held that a mutual promise to arbitrate was illusory where one party reserved the right to sue in a court of law for any breach of the agreement. State and federal decisions applying Illinois law, however, including *Lopez*, recognize that the rule established in *Hull* is not applicable where consideration underlies an arbitration provision contained in a broader contract.

In *Bishop v. We Care Hair Dev. Corp.*, 316 Ill. App. 3d 1182, 1198, 738 N.E. 2d. 610 (Ill. App. Ct. 2000), the plaintiff asserted that an arbitration provision contained within a contract was illusory because the provision allowed the defendant to litigate its claims under the agreement, but required the plaintiff to arbitrate its disputes. *Id.* The court, however, found that the plaintiff's reliance on *Hull* was inapposite. The court stated that although "*Hull* held that a mutual agreement to arbitrate was effectively abrogated by provisions granting one party a unilateral right to a judicial forum in the event of a breach of the agreement," "Hull cannot be reconciled with Illinois law." *Id.* Specifically, the "Restatement (Second) of Contracts § 79 provides that mutuality of obligation is not essential if the requirement of consideration has been met." *Id.* (citing Restatement (Second) of Contracts, § 79 (1981); *Jacob v. C & M Video*, 248 Ill. App. 3d 654, 618 N.E.2d 1267 (Ill. App. Ct. 1993) (implicitly rejecting the holding in Hull)).

8

Under Illinois law, therefore, if the requirement of consideration has been met in the contract, mutuality of obligation pursuant to the arbitration provision is not required. *See also Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill. App. 3d 214, 238, 882 N.E.2d 157 (Ill. App. Ct. 2008*)* (distinguishing arbitration provision at issue from arbitration contract in *Vassilkovska* "because the promise to arbitrate is part of a clause within a larger contract" and holding that the arbitration clause does not suffer for lack of mutuality of obligation because the contract is supported by consideration); *accord Vassilkovska*, 358 Ill. App. 3d 20, 24, 830 N.E.2d 619, 626 ("A *mutual* promise to arbitrate would be sufficient consideration to support an independent arbitration agreement. Mutuality of obligation is required only to the extent that both parties to an agreement are bound or neither is bound; that is, if the requirement of consideration has been met, mutuality of obligation is not essential."); *GMAC v. Johnson*, 354 Ill. App. 3d 885, 822, N.E.2d 30, 37 (Ill. App. Ct. 2004) ("While a mutual promise to arbitrate is sufficient consideration to support an arbitration agreement, that promise need not be equal where any other consideration for the contract, of which the agreement is part, exists.") (internal citations omitted).

Likewise, in *Dorsey v. H.C.P. Sales, Inc.*, 46 F. Supp. 2d 804, 807 (N.D. Ill. 1999), the plaintiff claimed that an arbitration agreement was unenforceable because it was "one-sided," and that the defendant had reserved the right to resolve claims through litigation. *Id.* The court noted that:

> Illinois law is quite clear that contracts need not be reciprocal to be enforceable. In other words, parties need not undertake identical obligations. Instead, mutuality is 'only required to the extent that both parties to an agreement are bound. If the requirement of consideration has been met[,] mutuality of obligation is not essential.'

9

*Id.* (internal citations omitted). The court in *Dorsey* noted that Illinois courts have explicitly rejected the *Hull* approach, applied in *Lopez*, when a separate arbitration agreement is not at issue and have held that arbitration provisions are enforceable where the larger contract at issue is supported by consideration. *Id.* (citing *Kroll v. Doctor's Assoc., Inc.*, 3 F.3d 1167, 1171 (7th Cir. 1993) ("Parties can agree to arbitrate some disputes and not others . . . . [and] not undermine the mutuality of the . . . arbitration provision.")). *See also Gersten v. Intrinsic Techs., LLP*, 442 F. Supp. 2d 573, 585, n.5 (N.D. Ill. 2006) (noting that *Vassilkovska* "found that the arbitration agreement at issue was *a separate stand-alone contract* and therefore required consideration for arbitration," but that "it is well recognized that '[a] contract does not lack mutuality merely because its obligations appear unequal or because every obligation or right is not met by an equivalent counter obligation or right in the other party'") (emphasis added) (internal citations omitted); *Design Benefit Plans v. Enright*, 940 F. Supp. 200, 205 (N.D. Ill. 1996) (distinguishing *Lopez* and *Hull,* and holding that an arbitration provision compelling one party to submit all disputes to arbitration but allowing the other party the choice of pursuing arbitration or litigation was not invalid for lack of mutuality of remedy or obligation where broader contract was supported by consideration). Accordingly, pursuant to controlling Illinois law, because the

Agreement is supported by consideration,[1] mutuality of the arbitration provision is not required and the arbitration provision is enforceable.

### C.      Statute of Limitations Defense

MAW also attempts to avoid arbitration by arguing that it intends to raise a statute of limitations argument and that the Court, and not the arbitrator, must resolve this issue. This argument is directly contrary to controlling case law. The Seventh Circuit's position on this issue is again clear as it has held that procedural questions are for the arbitrator, not the court, to decide. In *Zurich Am. Ins. Co.*, the Seventh Circuit stated:

> In determining a request to compel arbitration, the court's duty is to determine whether the parties' grievance belongs in arbitration, not rule on the potential merits of the underlying dispute between the parties. *AT&T Tech., Inc.*, 475 U.S. at 649. "Procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator to decide. So, too, the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (emphasis in original) (internal citations and quotations omitted).

466 F. 3d at 580-81 (holding that resolution of a dispute regarding the preclusive effect of a California state court judgment was properly left to the arbitrator). *See also Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004) (noting that "Illinois considers statutes of limitations to be procedural questions governed by the law of the forum"); *Niro v. Fearn*

---

[1]  MAW makes a cursory argument without citation to legal authority in its Sur-Reply that the Agreement is not supported by other consideration because no commissions had been paid to MAW at the time the parties executed the Agreement. As noted by CNA, the Agreement is supported by consideration because the Agreement grants MAW the ability to market and bind insurance on behalf of CNA and to receive commissions. *See In re Marriage of Tabassum*, 377 Ill. App. 3d 761, 770, 881 N.E.2d 396 (Ill. App. Ct. 2007) ("Consideration is defined as a bargained-for exchange of promises or performance. An act or promise that benefits one party or is a detriment to the other party is consideration sufficient to support a contract.") (internal citations omitted). Moreover, given MAW's failure to develop or support its argument, the Court will not consider MAW's contention that the parties must have exchanged money at the time of the execution of the Agreement in order for consideration to be present. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

11

*International, Inc.*, 827 F.2d 173, 176 (7th Cir. 1987) ("[O]nce it is determined that the underlying dispute concerns a subject matter covered by arbitration provisions, the court's only role is to order arbitration. The arbitrator should determine the effect of any 'procedural' shortcomings of either party.") (citing *John Wiley & Sons v. Livingston*, 376 U.S. 543, 11 L. Ed. 2d 898, 84 S. Ct. 909 (1964)).

MAW relies on two cases to support its claim that the application of a statute of limitations is a question for the Court, and not the arbitrator, to decide. First, MAW relies on *Robbins v. Chipman Trucking, Inc.*, 866 F.2d 899 (7th Cir. 1988). In *Robbins*, the Court held that whether the defendant timely filed its request for arbitration pursuant to a statutory provision regarding the timeliness of an arbitration demand under the Multiemployer Pension Plan Amendments Act of 1980 was a question properly determined by the district court. The Seventh Circuit distinguished its ruling from Supreme Court cases holding that procedural requirements are for the arbitrator to determine because the case specifically involved "[t]he statutory timeliness of a request to arbitrate." *Id.* at 899. Contrary to MAW's assertion that the Seventh Circuit has addressed "this very question," which involves the application of a statute of limitations, in *Robbins* the Seventh Circuit only considered the application of a statute governing the time in which a party may file an arbitration request for certain enumerated grievances. The second case relied on by MAW, *Chicago Sch. Reform Bd. of Trs. v. Diversified Pharm. Servs., Inc.*, 40 F. Supp. 2d 987, 990, 992-93 (N.D. Ill. 1999), is similarly distinguishable because it dealt with application of a provision of the arbitration contract that limited the time period in which a party could seek to arbitrate a dispute.

12

Conversely, in the present case, the statutory provision at issue does not govern questions of timeliness of arbitration requests. Instead, the statute of limitations is applicable to the substantive legal question raised by the dispute underlying Plaintiff's complaint. Accordingly, given that it is clear that arbitration is the appropriate method to resolve questions raised by Plaintiff's complaint, the procedural issue of the application of the statute of limitations is for the arbitrator to decide. *See Edward D. Jones & Co. v. Sorrells*, 957 F.2d 509, 514 (7th Cir. 1992) (noting the difference between a substantive arbitration rule governing timeliness of a request for arbitration and a procedural statute of limitations argument).

The Seventh Circuit's holding that an arbitrator determines procedural questions, including defenses to arbitration, governs CNA's statute of limitations defense, and accordingly its defense is not a proper question for resolution by the Court.

## II. Dismissal Pursuant to Rule 12(b)(1) or 12(b)(3)

While moving for an order to compel arbitration pursuant to 9 U.S.C. § 1, *et seq.*, CNA also requests that the court dismiss MAW's complaint pursuant to Rules 12(b)(1) and 12(b)(3). While the Court recognizes that courts in this district have employed Rules 12(b)(1) and 12(b)(3) to dismiss cases under similar circumstances, in accordance with 9 U.S.C. § 3 and Seventh Circuit precedent, the Court stays the action pending arbitration.

### A. Rule 12(b)(1)

Rule 12(b)(1) permits dismissal for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The Seventh Circuit has not directly ruled on the applicability of Rule 12(b)(1) to dismissal of an action when a district court grants a motion to compel arbitration, but *Continental Cas. Co.*, 417 F.3d 727, is instructive. In *Continental*, the Seventh Circuit noted that

a series of district courts, including at least one in this district, have held that a determination regarding arbitrability is "jurisdictional and therefore, a Rule 12(b)(1) dismissal is appropriate." *Id.* at 732. While the Seventh Circuit did not ultimately reach the issue of whether a Rule 12(b)(1) dismissal was appropriate, the Court did note that:

> This view stems from *Evans v. Hudson Coal Co.*, 165 F.2d 970 (3d Cir. 1948), a case that analogized a motion to stay pending arbitration to an assertion that the district court lacked subject matter jurisdiction--a Rule 12(b)(1) assertion, *id.* at 972 ("[The district court] is thus, pending arbitration, deprived of jurisdiction of the subject matter."). It would appear, however, that the Third Circuit has rejected the jurisdictional approach of *Evans*.

*Id.* at 732, n. 7. Moreover, the Seventh Circuit also noted that, "dismissal is entirely separate from the Rule 12(b) rubric" because:

> We have noted that the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration rather than to dismiss outright. *See Tice v. American Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002). The authority to stay proceedings does not derive from Rule 12(b), *cf.* Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure . . . to state a claim . . . ." (emphasis added)), but rather from the FAA, 9 U.S.C. § 3, *see* 5C Charles Alan Wright *et al.*, Federal Practice and Procedure § 1360, at 87-89 (3d ed. 2004) (categorizing a motion to stay pending arbitration as "Not Enumerated in Rule 12(b)").

*Id.* Accordingly, the Court agrees with MAW that the Seventh Circuit's analysis in *Continental* reveals that the appropriate step subsequent to granting a motion to compel arbitration is to stay the case, rather than dismiss the case for lack of jurisdiction.

### B. Rule 12(b)(3)

Rule 12(b)(3) permits dismissal for improper venue. Fed. R. Civ. R. 12(b)(3). Relying on *Continental*, and district court cases applying that ruling, CNA argues that numerous courts in this district have dismissed complaints based upon improper venue due to a valid arbitration clause. While the Seventh Circuit did affirm a dismissal pursuant to Rule 12(b)(3) after the grant

14

of a motion to compel arbitration in *Continental*, the Court agrees with MAW that the Seventh Circuit's ruling demonstrates that a 12(b)(3) dismissal is only proper where a party brings suit in a district court where the arbitration agreement requires arbitration before a panel outside the court's border. The Seventh Circuit explained its holding as follows:

> We think it is clear that . . . the district court proceeded under Rule 12(b)(3)--improper venue--when it disposed of the case. This approach makes eminent sense both in terms of the actual substance of the district court's action and in terms of our precedent. The district court ultimately dismissed this case because the forum selection clauses in the Quota Share Contract and in the Participation Agreement required arbitration in other districts. We have held dismissal under these circumstances to be appropriate, and, when the question has arisen, we have held that such dismissal properly is requested under Rule 12(b)(3). . . . Moreover, because the Federal Arbitration Act forbids the district court to compel arbitration outside the confines of the district, the court properly dismissed the action. The judgment of the district court is affirmed.

*Continental Cas. Co.*, 417 F.3d at 733-35 (internal citations omitted). While some district courts, highlighted in CNA's reply brief, appear to have more broadly applied the ruling in *Continental*, the Seventh Circuit's ruling makes clear that a Rule 12(b)(3) dismissal is only appropriate where a party files suit outside the district in which arbitration is required to occur. Here, the Agreement requires arbitration in Chicago, Illinois. Accordingly, venue is not improper and dismissal pursuant to Rule 12(b)(3) is not warranted. Instead, pursuant to § 3 of the FAA, the Court stays the action pending arbitration. *See* 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.")

**CONCLUSION**

For the foregoing reasons, the Court denies CNA's motion dismiss, and grants CNA's motion to compel arbitration in accordance with the terms of the arbitration provision contained in the parties' Agreement. In accordance with § 3 of the FAA, the Court stays the litigation pending arbitration.

DATED:  March 3, 2010                                        ENTERED

                                                             _____
                                                             AMY J. STUEVE
                                                             United States District Court Judge